IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ARLIN GEOPHYSICAL COMPANY and LAURA OLSON, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant & Counterclaim Plaintiff, <br><br> v. <br><br> JOHN E. WORTHEN and FUJILYTE CORPORATION, <br><br> Counterclaim Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [487] MOTION FOR SUMMARY JUDGMENT AND DENYING [486] MOTION FOR SUMMARY JUDGMENT** <br><br><br> Case No. 2:08-cv-00414-DN-EJF <br><br> District Judge David Nuffer |

This case involves multiple parties' efforts to quiet title to, or foreclose upon, fifteen parcels of real property that were encumbered by federal tax liens. Following a series of rulings and stipulations, including a remand order from the Tenth Circuit Court of Appeals, the only remaining issues in the case relate to the properties identified in the United States' Fifth Amended Counterclaim[1] as Property 14 and Property 15 (collectively, the "Properties").[2]

---

[1] United States of America's Fifth Amended Counterclaim ("Fifth Amended Counterclaim"), docket no. 160, filed Apr. 24, 2011.

[2] The only remaining parties in this case are Defendant and Counterclaim Plaintiff United States of America ("United States") and Counterclaim Defendants John E. Worthen ("Worthen") and Fujilyte Corporation ("Fujilyte"). All claims as to all the other named parties in this case have been resolved.

The Properties were sold at foreclosure of the federal tax liens, and the funds from the sale were deposited in the court registry.[3] Based on a stipulation of the United States and Counterclaim Defendants,[4] the sale of the Properties was confirmed.[5] The United States now seeks summary judgment authorizing the funds on deposit in the court registry to be distributed to the United States.[6] Counterclaim Defendants seek summary judgment declaring that (a) Counterclaim Defendant Fujilyte Corporation ("Fujilyte") did not hold title to the Properties as the nominee of Counterclaim Defendant John E. Worthen ("Worthen"); (b) Fujilyte is entitled to damages for the taking and sale of the Properties; and (c) Worthen has the right to redeem the Properties, and may do so within 120 days from a favorable decision permitting redemption.[7]

Because the undisputed material facts demonstrate that Fujilyte held title to the Properties as Worthen's nominee, the United States had valid and enforceable tax liens on the Properties. The United States was entitled to sell the Properties at foreclosure to satisfy its judgment against Worthen, and the United States is entitled to the funds on deposit in the court registry. Fujilyte is not entitled to damages for the taking and foreclosure sale of the Properties. And Worthen has no right to redeem the Properties as a matter of law. Therefore, the United States' Motion for Summary Judgment[8] is GRANTED, and Counterclaim Defendants' Motion for Summary Judgment[9] is DENIED.

---

[3] Receipt, docket no. 472, filed Nov. 23, 2016; Receipt, docket no. 470, filed June 21, 2017; Receipt, docket no. 469, filed May 26, 2017.

[4] Joint Status Report ¶ 7, docket no. 476, filed Sept. 1, 2017.

[5] Order on Joint Status Report at 2, docket no. 477, filed Sept. 5, 2017.

[6] United States' Motion for Summary Judgment and Memorandum in Support Regarding Distribution of Funds from Properties 14 and 15 ("United States' Motion for Summary Judgment") at 1, docket no. 487, filed Jan. 26, 2018.

[7] Motion for Summary Judgment & Extension ("Counterclaim Defendants' Motion for Summary Judgment") at 1-2, docket no. 486, filed Jan. 26, 2018.

[8] Docket no. 487, filed Jan. 26, 2018.

[9] Docket no. 486, filed Jan. 26, 2018.

**Contents**

UNDISPUTED MATERIAL FACTS ............................................................................... 3
DISCUSSION ............................................................................................................... 10
    The United States had valid and enforceable federal tax liens on the Properties ............ 10
        The Properties were subject to resulting and constructive trusts in favor of
        Worthen.................................................................................................................... 12
        Fujilyte held title to the Properties as Worthen's nominee .................................. 15
        Worthen's bankruptcy discharge did not preclude enforcement of the federal tax
        liens on the Properties ............................................................................................ 18
    Worthen has no redemption rights in the Properties ....................................................... 20
ORDER ........................................................................................................................ 22

## UNDISPUTED MATERIAL FACTS[10]

1.      Worthen has a long criminal history, including obstruction of justice, securities fraud, and tax fraud.[11]

2.      Some of Worthen's criminal schemes involved manipulation of the market for certain penny stocks. One of these schemes, known as the "Western Pacific Scheme" involved the use of nominees to conduct "wash trades" and the creation of artificial public demand in shares in Western Pacific stock, driving the price from 3 cents per share to $1 per share in a twelve-day time period, netting Worthen over $200,000. Worthen conducted a similar scheme in shares in a company known as Nordic Ltd.[12]

---

[10] The following Undisputed Material Facts are taken from the facts asserted in the parties' briefing. All material facts asserted by the parties for which no dispute was raised are considered undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2). All facts asserted by the parties that do not appear in these Undisputed Material Facts are either dispute, not material, not supported by the cited evidence, or are conclusions of law and not facts.

[11] United States' Motion for Summary Judgment ¶ 1, at 6 (citing *United States v. Worthen*, 2:09-cr-00788-DAK (D. Utah); *United States v. Worthen*, CR-07-410 (W.D. Wa.); *United States v. Worthen*, 1:97-cr-00005-BSJ (D. Utah); *United States v. Worthen*, CR-87-1387 (S.D. Cal.); Statement by Defendant in Advance of Plea of Guilty in *United States v. Worthen*, 2:09-cr-00788-DAK (D. Utah), docket no. 365-14, filed Dec. 12, 2012; Presentence Report in *United States v. Worthen*, 1:97-cr-00005-BSJ (D. Utah) ("Presentence Report"), docket no. 365-15, filed Dec. 12, 2012).

[12] *Id*. ¶ 2, at 6 (citing Presentence Report ¶ 48).

3.      In connection with his various criminal activities, Worthen "has a history of buying, selling and managing shell corporations and other business entities." Beginning at least as early as 1990, Worthen diverted personal income into various "corporate bank accounts and then used the money as he desired." The "majority of the funds deposited" into these corporations' accounts "came from Mr. Worthen."[13]

4.      Worthen "used these corporate bank accounts to pay many of his personal living expenses . . . in order to hide his control over the use of the money" all in an effort to evade "income tax due and owing to the United States[.]"[14]

5.      Worthen first formed Fujilyte in 1989 with his brother Gerald and son McKeen.[15]

6.      Over the course of its existence, Fujilyte did not respect corporate formalities, and frequently allowed its business filings to lapse.[16]

---

[13] *Id*. ¶ 3, at 7 (citing Presentence Report ¶¶ 5, 18).

[14] *Id*. ¶4, at 7-8 (citing Presentence Report ¶¶ 5-6).

[15] *Id*. ¶ 5, at 8 (citing 30(b)(6) Deposition of Fujilyte Corporation ("Fujilyte Depo.") at 6:19-7:9, 10:13-23, docket no. 487-2, filed Jan. 26, 2018; Articles of Incorporation of Fujilyte Corporation, docket no. 365-13, filed Dec. 12, 2012).

[16] *Id*. ¶ 6, at 8 (citing Fujilyte Depo. at 12:13-24, 13:12-19, 17:20-18:19, 20:16-21:17, 24:13-18, 49:14-21; Deposition of John Worthen ("Worthen Depo.") at 38:15-25, docket no. 487-3, filed Jan. 26, 2018). Counterclaim Defendants attempted to dispute this material fact by referencing Fujilyte's corporate charter; minutes for special meetings of Fujilyte's directors held on September 17 and 21, 1990; and a letter from the attorney of the U.S. Trustee in Fujilyte's Chapter 11 bankruptcy case regarding the case's dismissal and fees owed by Fujilyte. Memorandum in Opposition to United States Motion for Summary Judgment ("Counterclaim Defendants' Response") at 3, docket no. 489, filed Feb. 23, 2018 (citing Articles of Incorporation of Fujilyte Corporation; Minutes of a Special Meeting of Directors of the Fujilyte Corporation ("Fujilyte Minutes"), attached as Exhibit B to Fujilyte Corporation's Memorandum in Opposition to United States Motion for Judgment and Order of Sale Regarding Properties 14 and 15, docket no. 446, filed July 8, 2015; Letter Re: Dismissal of Fujilyte Corp/98-29883, attached as Exhibit B to Counterclaim Defendants' Response). But Counterclaim Defendants do not offer any facts or discussion as to how these documents dispute the material fact as asserted by the United States. That Fujilyte filed a corporate charter, prepared minutes for two special meetings early in its corporate existence, and had its bankruptcy case dismissed are insufficient to raise a dispute of fact as to whether Fujilyte respected corporate formalities and allowed its business filings to lapse. This is particularly true considering other material facts regarding Fujilyte's failure to respect corporate formalities, which Counterclaim Defendants did not attempt to dispute. *Infra* at Undisputed Material Facts ¶¶ 7-8, 11-13, 24-25.

7.     Fujilyte was one of multiple entities established by Worthen, who frequently transferred funds among entities he had established without regard to corporate formalities.[17]

8.     During 1990, Worthen earned approximately $495,000 which he diverted into "five other corporations over which [he] exercised substantial control," including Fujilyte, and then "used the money as he desired."[18]

9.     In September 1990, Worthen deposited at least $25,000 of the funds (referred to in ¶ 8) into an account in the name of Fujilyte at the Cottonwood branch of First Security Bank of Utah, N.A.[19]

10.     This $25,000 deposit into Fujilyte's bank account formed, in part, the factual predicate for Worthen's conviction (based upon a guilty plea) for attempted income tax evasion.[20]

11.     Worthen, testifying as Fujilyte's designee under Fed. R. Civ. P. 30(b)(6), could not identify any Fujilyte bylaws, records of shareholder votes, or other corporate documents.[21]

12.     In his deposition testimony given in his personal capacity, Worthen could not recall any Fujilyte annual meetings.[22]

13.     Worthen testified that Fujilyte had no income and did not file federal income tax returns for the years 1990-1996. Worthen had no recollection of Fujilyte ever having any employees or paying anyone a salary.[23]

---

[17] United States' Motion for Summary Judgment ¶7, at 8 (citing Fujilyte Depo. at 46:24-47:15, 47:22-48:25; Worthen Depo. at 56:9-23).

[18] *Id*. ¶ 8, at 8 (citing Presentence Report ¶¶ 4, 21).

[19] *Id*. ¶ 9, at 9 (citing Presentence Report ¶¶ 15, 17; Fujilyte Minutes).

[20] *Id*. ¶ 10, at 9 (citing Presentence Report ¶¶ 15-19).

[21] *Id*. ¶ 11, at 9 (citing Fujilyte Depo. at 12:13-24, 21:1-7).

[22] *Id*. ¶ 12, at 9 (citing Worthen Depo. at 38:15-25).

[23] *Id*. ¶ 13, at 9-10 (citing Worthen Depo. at 29:17; Fujilyte Depo. at 46:4-8).

14.     Fujilyte struggled to pay its bills.[24]

15.     Fujilyte acquired the Properties on February 12, 1993, from Melville Construction Company ("MCC").[25]

16.     Worthen provided at least a portion of the money that Fujilyte used to purchase the Properties.[26]

17.     In order to obtain funds, Fujilyte borrowed from the Cipra Non-Revocable Trust ("Cipra") in April 1994 and used part of the proceeds to pay off the MCC mortgage.[27]

18.     Fujilyte remortgaged the Properties in July 1996 through John F. Green ("Green") for $145,264.00.[28]

19.     A large portion of the $145,264.00 was used to pay off the Cipra mortgage.[29]

20.     In connection with Fujilyte's paying off the Cipra mortgage with the loan from Green, Worthen in his individual capacity pledged as collateral $145,000 worth of stock in a

---

[24] *Id*. ¶ 17, at 10 (citing Worthen Depo. at 56:14-20).

[25] *Id*. ¶ 18, at 10 (citing Fifth Amended Counterclaim ¶¶ 55-56; Answer to USA's Fifth Amended Counterclaim ¶¶ 56-56, docket no. 187, filed May 1, 2011); Counterclaim Defendants' Motion for Summary Judgment ¶ 8, at 3 (citing Affidavit of John Worthen ("Worthen Affidavit") ¶ 10, docket no. 486-2, filed Jan. 26, 2018); Counterclaim Defendants' Response ¶ 2, at 4.

[26] A dispute exists as to exactly how Fujilyte obtained the funds it used to purchase the Properties. The United States points to Worthen's deposition testimony that he was unsure how Fujilyte obtained the funds, but suggested the money had come from investors, including himself, or a loan he made to Fujilyte for trading penny stocks. United States' Motion for Summary Judgment ¶¶ 18-19, at 10-11 (citing Worthen Depo. at 29:17, 41:4-11, 48:6-19, 49:9-15). Counterclaim Defendants point to Worthen's affidavit, in which he stated that he and others contributed a small amount of capital into Fujilyte, and that Fujilyte used this capital and provided MCC a trust deed to acquire the Properties. Counterclaim Defendants' Motion for Summary Judgment ¶ 9, at 3-4 (citing Worthen Affidavit ¶ 11); Counterclaim Defendants' Response ¶ 3, at 4. However, the varying explanations Worthen provided do not create a genuine issue of material fact. A common undisputed portion of Worthen's varying explanations exists, *i.e.*, that Worthen provided Fujilyte at least a portion of the funds Fujilyte used to purchase the Properties.

[27] Counterclaim Defendants' Motion for Summary Judgment ¶ 10, at 4 (citing Worthen Affidavit ¶ 12); Counterclaim Defendants' Response ¶ 4, at 4.

[28] Counterclaim Defendants' Motion for Summary Judgment ¶ 11, at 4 (citing Worthen Affidavit ¶ 13; Commitment for Title Insurance ¶ 13, at 3, docket no. 486-1, filed Jan. 26, 2018); Counterclaim Defendants' Response ¶ 5, at 4.

[29] Counterclaim Defendants' Motion for Summary Judgment ¶ 12, at 4 (citing Worthen Affidavit ¶ 14); Counterclaim Defendants' Response ¶ 6, at 4.

company called "Synfuel Technology, Inc." that was owned by San Pedro Securities, Inc., a nominee corporate entity controlled by Worthen.[30]

21.     Fujilyte failed to repay the Green loan, and Green and his counsel, Stephen G. Homer ("Homer"), threatened foreclosure. Throughout their interactions, Worthen indicated that the Properties were in fact his. In his deposition, Homer testified, for example, that Worthen had a personal affinity for the Properties that he called the "eagle's nest." Worthen attempted to avoid foreclosure by offering to "trade" other property he owned for the Properties:

> [He] was always saying, 'Hey, don't, don't foreclose on me. Leave Properties 14 and 15.' He didn't use that, but he was referring to the secured properties. 'I have got some property out in Herriman,' which is a suburb on the southwest corner of Salt Lake County, 'and I'll trade you that property in exchange.'[31]

22.     In or about 1997, Worthen reported to his probation officer that he had a financial interest in certain parcels of real estate in Utah County and Salt Lake county that were held in the name of Fujilyte.[32]

23.     In addition to the Properties, Fujilyte also held title to Worthen's personal residence located on Abinadi Road.[33]

24.     Fujilyte last renewed its corporate registration with the Utah Division of Corporations on April 8, 1994.[34]

---

[30] United States' Motion for Summary Judgment ¶ 20, at 11 (citing Presentence Report ¶¶ 15, 85, at 4, 30 n.18; Worthen Depo. at 41:20-25, 49:24-50:9, 54:25-55:11; Special Escrow Instructions, docket no. 365-10, filed Dec. 12, 2012; Synfuel Technology, Inc. Authorized Shares, docket no. 365-11, filed Dec. 12, 2012).

[31] *Id*. ¶ 21, at 11-12 (citing Deposition of Stephen G. Homer ("Homer Depo.") at 51:7-11, 51:24-52:25, docket no. 487-4, filed Jan. 26, 2018).

[32] *Id*. ¶ 22, at 12 (citing Presentence Report ¶ 85, at 27 n.7).

[33] *Id*. ¶ 23, at 12 (citing Worthen Depo. at 63:15-64:14).

[34] *Id*. ¶ 24, at 12 (citing Utah Business Search – Details Fujilyte Corporation, docket no. 365-17, filed Dec. 12, 2012).

25.     Fujilyte was involuntarily dissolved by the Utah Division of Corporations on February 1, 1996.[35]

26.     A delegate of the Secretary of the Treasury made assessments against Worthen for unpaid federal income tax, penalties, interest, and other statutory additions in the amounts and for the periods indicated:[36]

| TAX YEAR | ASSESSMENT DATE | UNPAID BALANCE OF ASSESSMENT |
|---|---|---|
| 1981 | 10/9/2000 | $1,535,233.54 |
| 1982 | 9/4/2000 | $1,304,674.47 |
| 1983 | 9/11/2000 | $1,523,938.35 |
| 1984 | 9/11/2000 | $2,243,894.89 |
| 1985 | 10/16/2000 | $997,780.47 |
| 1986 | 9/18/2000 | $748,723.84 |
| 1987 | 9/25/2000 | $413,125.18 |
| 1989 | 10/2/2000 | $234,691.80 |
| 1992 | 10/23/2000 | $360,359.13 |
| 1994 | 10/2/2000 | $530,667.08 |
| 1995 | 10/2/2000 | $698,957.12 |
| 1996 | 10/2/2000 & 10/23/2000 | $717,434.90 |
| 1997 | 10/2/2000 | $577,504.75 |
| 1998 | 10/2/2000 | $384,802.25 |
| 1999 | 10/2/2000 | $134,576.08 |
| 2003 | 6/28/2004 | $594.68 |
| 2007 | 11/24/2008 | $5,311.96 |

---

[35] *Id*. ¶ 25, at 12 (citing Utah Business Search – Details Fujilyte Corporation).

[36] *Id*. ¶ 26, at 12-14 (citing IRS Form 4340, docket no. 365-18, filed Dec. 12, 2012). All amounts were calculated as of February 14, 2008, except the liabilities for 2003 and 2007 which were estimated as of December 31, 2008.

27.     The United States filed a Notice of Federal Tax Lien concerning Worthen's outstanding tax liabilities for tax years 1982, 1983, 1984, 1986, 1987, 1989, 1994, 1995, and 1998 with the Salt Lake County Recorder's Office on December 29, 2000.[37]

28.     The United States filed a Notice of Federal Tax Lien concerning Worthen's outstanding tax liabilities for tax years 1981, 1985, 1992, 1996, 1997, and 1999 with the Salt Lake County Recorder's Office on February 14, 2001.[38]

29.     The United States filed a Notice of Federal Tax Lien concerning Fujilyte's status as an alter ego, nominee and/or transferee of Worthen with the Salt Lake County Recorder's Office on February 14, 2008.[39]

30.     On March 26, 2012, judgment was entered against Worthen and in favor of the United States in the amount of $18,000,000, plus interest accruing from the date of judgment, based on Worthen's unpaid federal income tax liabilities for tax years 1981-1987, 1989, 1992, 1994-1999, 2003, and 2007 (the "Judgment").[40]

31.     The United States' federal tax liens were the basis for the judicial foreclosure of the Properties.[41]

32.     At the time of the Properties' foreclosure, the Properties were owned and title was held by Fujilyte.[42]

---

[37] *Id*. ¶ 27, at 14 (citing Notice of Federal Tax Lien, docket no. 365-19, filed Dec. 12, 2012).

[38] *Id*. ¶ 28, at 14 (citing Notice of Federal Tax Lien, docket no. 365-20, filed Dec. 12, 2012).

[39] *Id*. ¶ 29, at 15 (citing Notice of Federal Tax Lien, docket no. 365-23, filed Dec. 12, 2012); Counterclaim Defendants' Motion for Summary Judgment ¶ 4, at 3 (citing Worthen Affidavit ¶ 6).

[40] United States' Motion for Summary Judgment ¶ 30, at 15 (citing Order Granting Stipulated Judgment, docket no. 332, filed Mar. 26, 2012).

[41] Counterclaim Defendants' Motion for Summary Judgment ¶ 5, at 3 (citing Worthen Affidavit ¶ 7).

[42] *Id*. ¶ 7, at 3 (citing Worthen Affidavit ¶ 9); Counterclaim Defendants' Response ¶ 1, at 4.

33.     Worthen filed for Chapter 7 bankruptcy in the United States Bankruptcy Court, District of Utah on December 29, 2015, case no. 15-31861.[43]

## DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[44] A factual dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[45] A fact is "material" if, under the substantive law, "it is essential to the proper disposition of [a] claim."[46] In determining whether summary judgment is appropriate, the factual record and all reasonable inferences drawn therefrom are view in a light most favorable to the nonmovant.[47]

### The United States had valid and enforceable federal tax liens on the Properties

The United States seeks summary judgment authorizing the funds on deposit in the court registry arising from the foreclosure sale of the Properties to be distributed to the United States.[48] The United States argues that it is entitled to the funds to satisfy its judgment against Worthen because it had valid and enforceable tax liens on the Properties.[49] Though title to the Properties was held by Fujilyte, the United States argues that Worthen retained a beneficial interest in the Properties through a resulting trust or constructive trust,[50] and that Fujilyte held title to the

---

[43] *Id.* ¶ 1, at 2 (citing Worthen Affidavit ¶ 3).

[44] Fed. R. Civ. P. 56(a).

[45] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[46] *Id.*

[47] *Id.*

[48] United States' Motion for Summary Judgment at 1.

[49] *Id.* at 17-29.

[50] *Id.* at 19-27.

Properties as Worthen's nominee.[51] Thus, the federal tax liens against Worthen properly attached to the Properties.

Counterclaim Defendants argue that because the Properties were directly acquired by Fujilyte, title to the Properties was not held by Fujilyte as Worthen's nominee.[52] Counterclaim Defendants also assert that the United States' judgment against Worthen was discharged in bankruptcy.[53] Counterclaim Defendants therefore argue that the United States' tax liens on the Properties were invalid and Fujilyte is entitled to damages for the taking and sale of the Properties.[54]

Under 26 U.S.C. § 6321, a lien arises in favor of the United States "upon all property and rights to property, whether real or personal," belonging to a taxpayer who refuses or neglects to pay tax after demand.[55] This language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."[56] The taxpayer's property rights are analogized to the classic "bundle of sticks."[57] And while "[s]tate law determines . . . which sticks are in a person's bundle[, w]hether those sticks qualify as 'property' for purposes of the federal tax lien statute is a question of federal law."[58]

Therefore, the determination of whether the Properties were held by Fujilyte as Worthen's nominee involves a two-step inquiry. First, Utah law is applied to determine the

---

[51] *Id*. at 27-29.

[52] Counterclaim Defendants' Motion for Summary Judgment at 1.

[53] *Id*. ¶¶ 3, 6, at 3.

[54] *Id*. at 5-6.

[55] 26 U.S.C. § 6321.

[56] *Dyer v. United States*, 528 U.S. 49, 56 (1999) (internal quotations omitted).

[57] *United States v. Craft*, 535 U.S. 274, 278 (2002).

[58] *Id*. at 278-79.

nature of Worthen's interest in the Properties.[59] And second, if Worthen had a property interest under Utah law, federal law is applied to determine whether that property interest constitutes "property" or "rights to property" to which a federal tax lien attaches.[60]

**The Properties were subject to resulting and constructive trusts in favor of Worthen**

The United States argues that Worthen retained a beneficial interest in the Properties under resulting trust and constructive trust theories.[61] Utah law recognizes both resulting and constructive trusts.

"[A] purchase money resulting trust is an equitable remedy designed to implement what the law assumes to be the intentions of the putative trustor."[62] "Where a transfer of properties is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid[.]"[63] "The fact which must be proven in the case of a purchase money resulting trust is that one party paid the purchase price for property and another party was given legal title."[64] And "it is the intention 'at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises.'"[65] Evidence indicating the payor's intent to retain the beneficial interest in the property includes:

(1) 'that the circumstances are such that the payor would have a reason for taking title in the name of another other than an intention to give him the beneficial interest . . . ; as, for example, where the payor had reasons for wishing that it

---

[59] *Id.*; *Dyer*, 528 U.S. at 58; *Holman v. United States*, 505 F.3d 1060, 1067 (10th Cir. 2007).

[60] *Craft*, 535 U.S. at 278-79; *Dyer*, 528 U.S. at 58; *Holman*, 505 F.3d at 1067.

[61] United States' Motion for Summary Judgment at 19-27.

[62] *In re Estate of Hock*, 655 P.2d 1111, 1114 (Utah 1982).

[63] *Id.* at 1115 (quoting Restatement (Second) of Trusts § 440 (1959)). There are exceptions where a resulting trust does not arise with a transfer of property that is made to one person and the purchase price is paid by another. *Id.*; Restatement (Second) of Trusts §§ 440, 441, 442, 444 (1959). However, none of these exceptions are applicable under the facts of this case.

[64] *Id.*

[65] *United States v. Tingey*, 716 F.3d 1295, 1302 (10th Cir. 2013) (quoting *In re Taylor*, 133 F.3d 1336, 1341 (10th Cir. 1998)).

should not be known that he was purchasing the property;' and (2) 'that the payor manages the property, collects rents, pays taxes and insurance, pays for repairs and improvements, or otherwise asserts ownership, and the acquiescence by the transferee in such assertion of ownership.'[66]

A constructive trust, on the other hand, "is an equitable remedy to prevent unjust enrichment[.]"[67] A constructive trust arises "where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior."[68] "To establish a wrongful act under Utah law, an entity must have obviously received funds by mistake or participated in active or egregious misconduct."[69] And "[u]njust enrichment occurs when the moving party has an 'equitable interest' in the property it seeks a constructive trust over."[70]

"[I]n most cases involving constructive or resulting trusts, [courts] are called upon to alter a deed or other writing which is regular in form and is presumed to convey a clear and unambiguous title."[71] "When such a deed or document is attacked, the party alleging the variance must prove the claim by clear and convincing evidence."[72] "Parol evidence may be introduced to prove a constructive or resulting trust since these trusts arise by operation of law and are expressly excluded from the statute of frauds."[73]

The undisputed material facts clearly and conclusively demonstrate that Worthen retained a beneficial interest in the Properties under a resulting trust theory. Starting in 1990, Worthen

---

[66] *Id.* (quoting Restatement (Second) of Trusts § 443 cmt. a).

[67] *In re Estate of Hock*, 655 P.2d at 1114.

[68] *Wilcox v. Anchor Wate Co.*, 164 P.3d 353, 362 (Utah 2007).

[69] *Id.*

[70] *Lodges at Bear Hollow Condominium Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 153 (Utah Ct. App. 2015) (citing *Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 600 (Utah 1983)).

[71] *In re Estate of Hock*, 655 P.2d at 1114

[72] *Id.*

[73] *Id.*

diverted personal funds into Fujilyte, and then used the money as he desired.[74] Fujilyte had no

income and struggled paying its bills.[75] Yet it was able to obtain sufficient funds to acquire the

Properties from MCC in February 1993.[76] Worthen provided at least a portion of the money that

Fujilyte used to purchase the Properties.[77] And Worthen individually pledged collateral to pay

off the debts on the Properties.[78] Worthen also exercised control over the Properties and

represented to others the Properties were his.[79] Under these facts, although Fujilyte ostensibly

held title to the Properties, Worthen was the beneficial owner. Therefore, a purchase money

resulting trust arose in favor of Worthen.

The requirements for a constructive trust are also clearly and conclusively shown by the

undisputed material facts. At the time of Fujilyte's formation, and in the years Fujilyte purchased

and borrowed against the Properties, Worthen failed to pay his federal income taxes.[80] Rather

than paying his taxes, Worthen funneled his money into corporate entities, including Fujilyte, in

effort to hide his control over the money's use and to evade his tax obligations.[81] These transfers

were made without regard to corporate formalities.[82] And during this time, Fujilyte failed to

respect corporate formalities, failed to file federal income tax returns, and allowed its corporate

filings to lapse.[83] Worthen then used the funds as he desired, including to pay personal living

---

[74] *Supra* at Undisputed Material Fact ¶¶ 3-4, 8-9.

[75] *Id*. ¶¶ 13-14.

[76] *Id*. ¶ 15.

[77] *Id*. ¶ 16.

[78] *Id*. ¶ 20.

[79] *Id*. ¶¶ 21-22.

[80] *Id*. ¶¶ 5, 15, 17-18, 26.

[81] *Id*. ¶¶ 3-4, 7-8.

[82] *Id*. ¶ 7.

[83] *Id*. ¶¶ 6-7, 11-13, 24-25.

expenses.[84] Indeed, Worthen's diversion of money to Fujilyte formed, in part, the factual predicate for Worthen's conviction for attempted income tax evasion.[85]

Under these facts, the United States was deprived the money it was due for Worthen's federal income taxes, and Fujilyte was unjustly enriched by its retention and use of Worthen's money. Additionally, Fujilyte's acquisition of the Properties is clearly traced to its and Worthen's wrongful behavior because the Properties were the fruit borne of Fujilyte's failure to follow corporate formalities and Worthen's tax evasion.[86] Therefore, Worthen retained a beneficial interest in the Properties through a constructive trust.

**Fujilyte held title to the Properties as Worthen's nominee**

Having determined that Worthen retained a beneficial interest in the Properties under Utah law, the inquiry turns to federal law to determine whether Worthen's interest in the Properties constitutes "property" or "rights to property" to which a federal tax lien attaches.[87] The United States argues that its federal tax liens attached to the Properties because Fujilyte held title to the Properties as Worthen's nominee.[88]

A federal tax lien will attach to the right to alienate or encumber property, even where that right is not held unilaterally.[89] A federal tax lien will also attach to "property held by a third party if it is determined that the third party is holding the property as a nominee of the delinquent taxpayer."[90] "A third party holds the property as a nominee if 'the taxpayer has engaged in a

---

[84] *Id.* ¶¶ 3-4, 8.

[85] *Id.* ¶¶ 7-10.

[86] *Id.* ¶ 16.

[87] *Craft*, 535 U.S. at 278-79; *Dyer*, 528 U.S. at 58; *Holman*, 505 F.3d at 1067.

[88] United States' Motion for Summary Judgment at 27-29.

[89] *Craft*, 535 U.S. at 284-85.

[90] *Tingey*, 716 F.3d at 1300 (quoting *Holman*, 505 F.3d at 1065).

legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership.'"[91]

"Although in many instances the delinquent taxpayer will have transferred legal title to a third party, an actual transfer of legal title is not essential to the imposition of a nominee lien."[92] "A delinquent taxpayer who has never held legal title to a piece of property but who transfers money to a third party and directs the third party to purchase property and place legal title in the third party's name may well enjoy the same benefits of ownership of the property as a taxpayer who has held legal title."[93] "In both instances, the third party may be the taxpayer's nominee."[94]

The following six factors are considered in evaluating nominee questions:

(1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.[95]

No one factor is determinative, but the most significant factor is the degree of control the taxpayer has over the property.[96]

Under the undisputed material facts, all but one of the nominee factors support that Fujilyte held title to the Properties as Worthen's nominee. First, Fujilyte had no income and struggled paying its bills.[97] Worthen diverted personal funds into Fujilyte, and then used the

---

[91] *Id*. (quoting *Holman*, 505 F.3d at 1065).

[92] *Holman*, 505 F.3d at 1065.

[93] *Id*.

[94] *Id*.

[95] *Id*. at 1065 n.1 (quoting *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005)).

[96] *United States v. Brown*, 2:07-cv-00810-BSJ, 2011 WL 4889520, *19 (D. Utah Oct. 11, 2011).

[97] *Supra* at Undisputed Material Facts ¶¶ 13-14.

money as he desired, including provided at least a portion of the money Fujilyte used to purchase the Properties.[98] There is no suggestion or evidence that Fujilyte ever provided Worthen consideration for the money he funneled into it, or that Fujilyte would ever remunerate Worthen.

Second, while title to the Properties was placed in Fujilyte's name,[99] Worthen transferred funds into Fujilyte (without regard to corporate formalities) to avoid his federal tax obligations and to conceal his assets from the Internal Revenue Service.[100] These transfers formed, in part, the factual predicate for Worthen's conviction for attempted tax evasion.[101] Meanwhile, Worthen, through Fujilyte, continued to borrow against the properties, and Worthen pledged collateral in his individual capacity to obtain the loan from Green.[102] When Fujilyte failed to repay the loan from Green, Worthen negotiated with Green and Homer to avoid foreclosure.[103] And in doing so, Worthen represented that the Properties were, in fact, his and offered to trade other property he owned for the Properties.[104] Worthen's ability to use and control property titled to Fujilyte is further shown by his use of Fujilyte's bank accounts to pay his personal living expenses, and that Fujilyte held title to his personal residence.[105]

Third, there was a close relationship between Worthen and Fujilyte. Worthen was both an incorporator and director of Fujilyte, and the only other incorporators or directors were Worthen's family members.[106]

---

[98] *Id*. ¶¶ 3-4, 7-9, 16.

[99] *Id*. ¶¶ 15, 32.

[100] *Id*. ¶¶ 3-4, 7-10.

[101] *Id*. ¶ 8-10.

[102] *Id*. ¶¶ 17-18, 20.

[103] *Id*. ¶ 21.

[104] *Id*.

[105] *Id*. ¶¶ 4, 8, 23.

[106] *Id*. ¶ 5.

The fourth factor does not apply here. The Properties were never transferred from Worthen to Fujilyte. But this factor is not required to conclude that Fujilyte was Worthen's nominee because "an actual transfer of legal title is not essential to the imposition of a nominee lien."[107]

Finally, both the fifth and sixth factors are shown. Worthen represented to Green and Homer that the Properties were his,[108] and he reported to his probation officer that he had a financial interest in properties held in Fujilyte's name.[109] Worthen, through Fujilyte, borrowed against the Properties.[110] He also used funds held by Fujilyte to pay his personal living expenses and in other ways he desired.[111] And Worthen continued to live in a home purportedly owned by Fujilyte.[112]

Applying the six nominee factors to the undisputed facts of this case, Fujilyte held title to the Properties as Worthen's nominee. Therefore, Worthen's beneficial interest in the Properties constitutes "property" or "rights to property" to which the United States' federal tax liens attach.

**Worthen's bankruptcy discharge did not preclude enforcement of the federal tax liens on the Properties**

Counterclaim Defendants argue that regardless of the propriety of the United States' federal tax liens on the Properties, Worthen's bankruptcy discharge precluded enforcement of the liens.[113] This argument lacks merit.

---

[107] *Holman*, 505 F.3d at 1065.

[108] *Supra* at Undisputed Material Facts ¶ 21.

[109] *Id*. ¶ 22.

[110] *Id*. ¶¶ 17-18, 20.

[111] *Id*. ¶¶ 3-4, 7-9, 16.

[112] *Id*. ¶ 22.

[113] Counterclaim Defendants' Motion for Summary Judgment ¶¶ 3, 6, at 3.

"[A] bankruptcy discharge will not prevent enforcement of valid liens."[114] "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."[115] Therefore, "[a]lthough the discharge order may have extinguished Debtor's personal liability for that debt, the lien itself passe[s] through the bankruptcy proceeding unaffected."[116] Courts in multiple jurisdictions have applied these principles to hold that a bankruptcy discharge does not preclude enforcement of valid pre-petition federal tax liens.[117]

The United States filed Notices of Federal Tax Lien concerning Worthen's outstanding tax liabilities in December 2000, and February 2001.[118] The United States also filed a Notice of Federal Tax Lien concerning Fujilyte's status as an alter ego, nominee and/or transferee of Worthen in February 2008.[119] And the United States obtained its judgment against Worthen for his unpaid federal tax liabilities in March 2012.[120] It was not until December 2015, that Worthen filed for Chapter 7 bankruptcy.[121] Even assuming the United States' judgment against Worthen was discharged in his bankruptcy case, the discharge did not preclude enforcement of the United States' valid pre-petition federal tax liens on the Properties as a matter of law.

---

[114] *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986) (internal quotations omitted).

[115] *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

[116] *In re Lowther*, 52 Fed. App'x 476, 477 (10th Cir. 2002); *see also In re Jester*, 656 Fed. App'x 425, 428 (10th Cir. 2016); *In re Wrenn*, 40 F.3d 1162, 1164-65 (11th Cir. 1994).

[117] *In re Wrenn*, 40 F.3d 1162, 1164-65 (11th Cir. 1994); *In re Orr*, 180 F.3d 656, 660-61 (5th Cir. 1999); *In re Isom*, 901 F.2d 744, 745-46 (9th Cir. 1990); *United States v. Kalevik*, 2007 WL 1891644, *9 (D. Colo. 2007); *In re Olson*, 154 B.R. 276, 282 (Bankr. D. N.D. 1993); *In re Rouse*, 141 B.R. 218, 220-21 (Bankr. W.D. Okla. 1992).

[118] *Supra* at Undisputed Material Facts ¶¶ 27-28.

[119] *Id*. ¶ 29.

[120] *Id*. ¶ 30.

[121] *Id*. ¶ 33.

Because the United States had valid and enforceable liens on the Properties, the United States was entitled to sell the Properties at foreclosure to satisfy its judgment against Worthen. Therefore, the United States is entitled to the funds on deposit in the court registry, and Fujilyte is not entitled to damages for the taking and foreclosure sale of the Properties.

**Worthen has no redemption rights in the Properties**

Counterclaim Defendants argue that even if the United State was entitled to sell the Properties at foreclosure, Worthen has the right to redeem the Properties under Utah law.[122] This argument is contrary to Counterclaim Defendants' position that Fujilyte, and not Worthen, owned and held all interest in the Properties.[123] Regardless, however, the argument lacks merit.

The Properties were sold pursuant to the September 17, 2015 Order of Sale.[124] The Order of Sale states that it was "entered pursuant to the provisions of 28 U.S.C. §§ 2001 and 2002[,] and 26 U.S.C. §§ 7402 and 7403."[125] The Order of Sale *further* provides that "[r]edemption rights under state or local law shall not apply to this sale or sales under federal law."[126]

The Tenth Circuit Court of Appeals vacated the Order of Sale determining that Counterclaim Defendants were not given meaningful opportunity to defend against the United States' position that Fujilyte held title to the Properties as Worthen's nominee.[127] But on remand,

---

[122] Counterclaim Defendants' Motion for Summary Judgment at 6-8.

[123] *Id*. at 5-6; Counterclaim Defendants' Response at 5-6.

[124] Order of Sale (Properties 14 and 15) ("Order of Sale"), docket no. 458, filed Sept. 17, 2015.

[125] *Id*. at 2.

[126] *Id*. ¶ 8.j., at 7.

[127] *Arlin Geophysical v. United States*, 696 Fed. App'x 362, 371 (10th Cir. 2017).

the United States and Counterclaim Defendants stipulated to the Properties' prior sales,[128] and the sales were confirmed.[129]

"[L]iens for federal taxes are entirely statutory and the provisions for their collection are to be strictly followed according to federal law."[130] "Unlike the sale of property under levy and distraint proceeding, where by statute there is a specific provision for redemption of the property, § 6337(b) of the 1954 Internal Revenue Code, 26 U.S.C. A. § 6337(b), Congress has not seen fit to provide that the right to redeem shall exist where property is sold pursuant to a judicial decree [under 28 U.S.C. § 2001]."[131] "[This] indicates that when Congress wishes to provide a right of redemption, especially in the federal tax collection context, it will do so intentionally—as it did with § 6337."[132] And when Congress does not provide a right of redemption in the federal tax collection context, it also does so intentionally.

"Section 7403 sales are governed by 28 U.S.C. §§ 2001 et seq., which do not contain a redemption provision."[133] Therefore, "no right of redemption exists in a foreclosure action to satisfy a judgment for tax liability."[134]

Because the Properties were sold pursuant to 28 U.S.C. §§ 2001 and 2002, and 26 U.S.C. §§ 7402 and 7403, Worthen has no redemption rights in the Properties as a matter of law.

---

[128] Joint Status Report ¶ 7.

[129] Order on Joint Status Report at 2.

[130] *United States v. Heasley*, 283 F.2d 422, 428 (8th Cir. 1960); *see also United States v. Brosnan*, 363 U.S. 237 240 (1960).

[131] *Id*. at 427; *see also United States v. Williams*, 796 F.3d 815, 817 (7th Cir. 2015); *United States v. Tempelman*, 48 Fed. App'x 798, 799 (1st Cir. 2002) (per curiam); *United States v. Scholnick*, 606 F.2d 160, 166-67 (6th Cir. 1979).

[132] *United States v. Nipper*, 2015 WL 4664921, *3 (D. N.M. July 2, 2015).

[133] *United States v. Kilgore*, 1994 WL 401066, *2 (D. Kan. July 5, 1994).

[134] *United States v. Jones*, 699 F.Supp. 248, 251 (D. Kan. 1988).

**ORDER**

IT IS HEREBY ORDERED that:

(1)      The United States' Motion for Summary Judgment[135] is GRANTED.

(2)      Counterclaim Defendants' Motion for Summary Judgment[136] is DENIED.

(3)      The Clerk is directed to distribute to the United States the funds on deposit in the

court registry arising from the sale of the Properties.

The Clerk is directed to close the case.

Signed September 26, 2018.

BY THE COURT

David Nuffer
United States District Judge

---

[135] Docket no. 487, filed Jan. 26, 2018.

[136] Docket no. 486, filed Jan. 26, 2018.